

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00512-CV

———————————————————

REGINA NACHAEL HOWELL FOSTER, Appellant

V.

MACKIE WOLF ZIENTZ & MANN, P.C., Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-317495-20

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

This is yet another chapter in the saga of litigation stemming from the foreclosure of Appellant Regina Nachael Howell Foster's homestead.[1]

Several years ago, we addressed and rejected Foster's assertion that Texas Property Code Section 51.002(d) entitled her to pre-foreclosure notice of her husband's default on the promissory note underlying the foreclosed-upon homestead lien. *Ocwen*, 2021 WL 4783151, at *6–9. Nonetheless, Foster continued to insist that she was entitled to Section 51.002(d) notice, and based on that premise, she sought to recover from the law firm that represented the loan servicer during the foreclosure

---

[1]*See Foster v. Info Tree Invs. & Mgmt., LLC*, No. 02-22-00253-CV, 2023 WL 1859884, at *1 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (per curiam) (mem. op.) (dismissing appeal); *Foster v. Ocwen Loan Servicing, LLC*, No. 02-20-00224-CV, 2021 WL 4783151, at *1–10 (Tex. App.—Fort Worth Oct. 14, 2021, pet. denied) (mem. op.) (affirming summary judgment in favor of lender and loan servicer); *Foster v. Info Tree Invs. & Mgmt., LLC*, No. 02-21-00116-CV, 2021 WL 2753545, at *1 (Tex. App.—Fort Worth July 1, 2021, pet. denied) (mem. op.) (dismissing Foster's appeal from eviction judgment); *Foster v. Mackie Wolf Zientz & Mann, P.C.*, No. 02-20-00294-CV, 2021 WL 1134452, at *1–8 (Tex. App.—Fort Worth Mar. 25, 2021, no pet.) (mem. op.) (reversing no-evidence summary judgment rendered against Foster); *Foster v. Infotree Invs. & Mgmt., LLC*, No. 07-20-00031-CV, 2021 WL 298446, at *1–4 (Tex. App.—Amarillo Jan. 28, 2021, pet. denied) (mem. op.) (affirming summary judgment in favor of new property owner); *In re Foster*, No. 02-20-00257-CV, 2020 WL 5047505, at *1 (Tex. App.—Fort Worth Aug. 27, 2020, orig. proceeding) (per curiam) (mem. op.) (denying Foster's petition for mandamus relief in suit against new property owner); *In re Foster*, No. 07-20-00190-CV, 2020 WL 4577717, at *1–2 (Tex. App.—Amarillo Aug. 7, 2020, orig. proceeding) (per curiam) (mem. op.) (dismissing mandamus petition in suit against new property owner); *see also Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 404–07 (5th Cir. 2017) (affirming summary judgment in favor of lender and loan servicer).

process: Appellee Mackie Wolf Zientz & Mann, P.C. (the Law Firm). When the Law Firm pointed out that Foster was collaterally estopped from relitigating the notice issue, the trial court implicitly agreed and granted the Law Firm's motion for traditional summary judgment.

But the trial court granted summary judgment without specifying a basis for its ruling, and collateral estoppel was not the only ground advanced in the Law Firm's summary-judgment motion. Despite this, Foster focuses her appeal on the well-worn notice issue, arguing that the trial court erred by rejecting five of her causes of action because, in essence, she was entitled to Section 51.002(d) notice.

Because Foster does not challenge all of the grounds supporting the summary judgment on three of her five appealed claims, and because she is collaterally estopped from relitigating the notice issue fundamental to her two remaining appealed claims, we will affirm.

## I. Background

More than twenty years ago, Foster consented to her then-husband's pledging their homestead as collateral for a mortgage refinancing loan. *See id.* at *1. Although both spouses signed the deed of trust, Foster did not sign the corresponding promissory note; her husband was the only obligor. So, when Foster's husband defaulted on the note, the loan servicer—Ocwen Loan Servicing, LLC—sent the husband a notice of default and hired the Law Firm to handle the foreclosure. The

Law Firm sent both Foster and her husband notices of acceleration, and ultimately, it proceeded with the foreclosure sale.

Foster alleged that she was entitled to receive notice of her husband's default under Section 51.002(d) of the Property Code,[2] so she sued numerous parties involved in the foreclosure, including the Law Firm, Ocwen, and the lender. *See id.* at *2 & n.4; *Mackie*, 2021 WL 1134452, at *1. Her suit against the Law Firm was severed from that against Ocwen and the lender, and the latter two defendants obtained summary judgment in their favor. *Ocwen*, 2021 WL 4783151, at *2. When Foster appealed that judgment, we affirmed it, and we directly addressed the merits of her argument that she was entitled to notice under Section 51.002(d). *See generally id.* at *1–10. We held that, because Foster had not signed the note and was not obligated to repay it, she was not a "debtor in default" within the meaning of Section 51.002(d) of the Property Code, so she was not statutorily entitled to notice of default. *Id.* at *6–9; *see* Tex. Prop. Code § 51.002(d) (requiring the mortgage servicer to serve "a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice . . . [of] default" and to provide at least 20 days to cure before giving notice of sale).

---

[2]According to Foster, because she was entitled to Section 51.002(d) notice of default, the failure to provide such notice rendered the subsequent notices of acceleration and sale defective.

Nonetheless, Foster continued to pursue her suit against the Law Firm based on the same notice-related argument. While "[w]e struggle to interpret [her] pleadings and the contours of her claims," *Mackie*, 2021 WL 1134452, at \*1, from what we can gather, she pleaded that the Law Firm had, among other things,[3]

- violated Property Code Section 51.002(d) by failing to send her notice of default and thereby deprived her of her constitutionally protected homestead without the statutorily required due process;

- violated the Texas Civil Practice and Remedies Code by "filing [the] deceptive and misleading Foreclosure Sale Deed" in the property records when it knew she had not received Section 51.002(d) notice;

- violated the Texas Deceptive Trade Practices Act (DTPA) by, among other things,[4] sending a notice of acceleration without first sending a Section 51.002(d) notice of default and filing a "misleading and deceptive Foreclosure Sale Deed" that misrepresented the Section 51.002(d) notice requirements;

- committed statutory theft by using a "false," "misleading," and "deceptive" foreclosure deed to unlawfully appropriate her homestead; and

---

[3]Foster's pleadings contained a wide variety of allegations, and it is unclear which statements she intended as purported causes of action, which she intended to distinguish her claims against the Law Firm from those against Ocwen so as to avoid the Law Firm's attorney-immunity defense, and which she intended for some other purpose. Regardless, even for causes of action unambiguously asserted in Foster's pleadings, she does not appeal the judgment as to all such claims. Rather, she repeatedly identifies her appealed claims as those that alleged "violation[s] of . . . statutorily imposed duties under the Texas Debt Collection Practices Act, the Texas Property Code, and . . . theft of real estate by false and misleading statements." We construe Foster's pleadings and appeal in light of this characterization, limiting our discussion accordingly.

[4]Foster also alleged that the Law Firm had failed to timely respond to her correspondence regarding the homestead lien.

5

- breached its "duty of absolute impartiality and fairness" as the foreclosure trustee by "fail[ing] and refus[ing] to comply with the notice mandates of [Property Code Section] 51.002(d)" and by filing a foreclosure deed when it knew that Foster had not been given Section 51.002(d) notice.

After a series of procedural wanderings,[5] Foster moved for traditional summary judgment on many of her claims and on one of the Law Firm's affirmative defenses. *See* Tex. R. Civ. P. 166a(c).[6] In her motion, she framed her lawsuit as "a simple case about what 'notice' is constitutionally required to be given a person with a vested homestead right before their property right can be taken during the nonjudicial foreclosure process." The trial court denied the motion.

Meanwhile, the Law Firm filed its own motion for traditional summary judgment, raising global challenges to Foster's causes of action based on the Law Firm's affirmative defenses and claim-specific challenges to three of Foster's causes of action. *See id.* As relevant here, the Law Firm highlighted that all of Foster's claims

---

[5]We recited many of the procedural complexities in Foster's prior appeal. *See Mackie*, 2021 WL 1134452, at *2–3. And in that appeal, we added to the procedural history by reversing a no-evidence summary judgment that had been granted in the Law Firm's favor. *See id.* at *1–8. On remand, the case was removed to federal court, then remanded back to state court. *See Foster v. Mackie Wolf Zientz & Mann, P.C.*, No. 4:23-CV-00800-P, 2023 WL 8244309, at *1–2 (N.D. Tex. Nov. 28, 2023) (order) (remanding case to state court). Meanwhile, Foster amended her petition and modified her claims.

[6]All relevant summary-judgment motions were filed before 2026, so the 2026 amendments to Texas Rule of Civil Procedure 166a do not apply. Sup. Ct. of Tex., *Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure*, Misc. Docket No. 26-9012 (Feb. 27, 2026) (applying amendments to motions "filed on or after March 1, 2026"). Citations to Rule 166a refer to the prior version.

6

were premised on her alleged entitlement to Section 51.002(d) notice, and it argued that because she had already litigated and lost the notice issue in *Ocwen*, she was collaterally estopped from relitigating it. Plus, the Law Firm asserted, three of Foster's causes of action failed on their own—Section 51.002 of the Property Code did not provide a private cause of action; the relied-upon provision of the Civil Practice and Remedies Code did not apply to deeds; and Foster's DTPA claim was undermined by her failure to believe the Law Firm's allegedly fraudulent statements, her reliance on foreclosure as the debt-collection action, and her lack of actual damages. The trial court granted the Law Firm's summary-judgment motion without specifying a basis for its ruling.[7] Foster appeals.

## II. Standard of Review

We review a summary judgment de novo, considering the evidence in the light most favorable to the nonmovant—here, Foster.[8] *First Sabrepoint Cap. Mgmt., L.P. v.*

---

[7]Before the trial court ruled, Foster moved for reconsideration of her summary-judgment motion, and the trial court heard oral arguments on both Foster's motion for reconsideration and the Law Firm's motion for summary judgment.

[8]Generally, "when both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court considers the summary[-]judgment evidence presented by both sides[ and] determines all questions presented." *Visa Inc. v. Sally Beauty Holdings, Inc.*, 651 S.W.3d 278, 314–15 (Tex. App.— Fort Worth 2021, pet. denied) (internal quotation marks omitted). But this rule applies only if "both parties . . . either (1) moved for final summary judgment . . . or (2) moved for summary judgment on the same issues." *Id.* Here, Foster did not move for final summary judgment, and she did not seek summary judgment on the Law Firm's collateral-estoppel defense.

*Farmland Partners Inc.*, 712 S.W.3d 75, 84 (Tex. 2025); *Ocwen*, 2021 WL 4783151, at \*3; *Mackie*, 2021 WL 1134452, at \*3; *Infotree Invs.*, 2021 WL 298446, at \*2. Because the Law Firm sought traditional summary judgment on both claim-specific challenges and global affirmative defenses, it was entitled to judgment in its favor if it either (1) conclusively negated at least one essential element of Foster's challenged causes of action or (2) conclusively established all elements of its own affirmative defense. *First Sabrepoint Cap. Mgmt.*, 712 S.W.3d at 84; *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *Ocwen*, 2021 WL 4783151, at \*3. When, as here, "there are multiple grounds for summary judgment and the order does not specify the ground on which summary judgment was granted, the appealing party must negate all grounds on appeal." *Infotree Invs.*, 2021 WL 298446, at \*2. Otherwise, "we are required to affirm the summary judgment, regardless of the merits of the unchallenged ground." *Emmert v. Wilmington Sav. Fund Soc'y, FSB ex rel. ARLP, Sec. Tr., Series 2015-1*, No. 02-20-00012-CV, 2021 WL 733301, at \*2 (Tex. App.—Fort Worth Feb. 25, 2021, pet. denied) (mem. op.).

### III. Discussion

On appeal, Foster challenges the applicability of collateral estoppel and rehashes her argument that she was entitled to notice of default under Section 51.002(d).[9] *See* Tex. Prop. Code § 51.002(d). She does not mention the Law Firm's

---

[9]Foster dedicates a portion of her appellate brief to attacking the validity of the foreclosed homestead lien. She raised a similar argument in her summary-judgment

8

claim-specific grounds for summary judgment on three of her five appealed claims, though. And, as for her other two appealed claims, they are premised on her alleged entitlement to Section 51.002(d) notice, and she is collaterally estopped from relitigating that issue.[10]

---

response as well, contending that the lien was constitutionally void because she did not sign the underlying promissory note. It is unclear if Foster intends for this argument to serve as part of her broader contention that she was entitled to Section 51.002(d) notice due to her "vested interest" in the homestead. *See supra* note 3. Regardless, we addressed and rejected the same argument in *Ocwen*. 2021 WL 4783151, at *4–5 (holding that Article 16, "Section 50 [of the Texas Constitution] contains no requirement that both spouses sign the underlying note in a purchase money or refinance transaction," so "the fact that Foster did not sign the underlying note did not make the lien invalid"); *see Infotree Invs.*, 2021 WL 298446, at *4 (clarifying, in another case stemming from Foster's foreclosure, that "the requirement that both spouses sign the underlying note in a purchase money or refinance transaction is not set forth in the Texas Constitution"). So, to the extent that the trial court implicitly rejected Foster's constitutional argument when it granted the Law Firm's summary-judgment motion, the trial court did not err by following *Ocwen* as binding precedent.

[10]Foster organizes her substantive legal argument in nine sections. But these sections do not correspond to her list of eleven issues presented. Rather, in her issues presented she asserts (1) in one issue that "Article 16[, S]ection 50(c) of the Texas Constitution appl[ies]" to her homestead lien; (2) in another, that "the term debtor [for purposes of Section 51.002(d) notice] mean[s] any person having an interest in the real property . . . whether or not the person is an obligor on the note"; (3) in five others, that an attorney acting as a foreclosure trustee "ha[s] the duty to act with absolute impartiality," to "ensure the probable validity of the debt against anyone with a property interest," to "ensure that . . . the [homestead] loan has been executed by both spouses," and to "ensure that all parties with an interest in the collateral . . . receive each of the notices required by law"; (4) in two more issues, that the DTPA and the prohibition on statutory theft apply to attorneys acting as foreclosure trustees; and (5) in her two final issues, that "[the] trial court abuse[d] its discretion by applying res judicata . . . [or] collateral estoppel . . . when the claims against the lender ha[d] been severed." [Formatting and capitalization altered.] For clarity, we focus on the substance of her arguments, and we group her complaints by cause of action and disposition.

9

**A.      Foster does not challenge all grounds for summary judgment on her Property Code, Civil Practice and Remedies Code, and DTPA claims.**

The Law Firm's summary-judgment motion included arguments that (1) Section 51.002 of the Property Code did not support a private cause of action; (2) even if the Law Firm had filed a fraudulent deed in the property records, the relied-upon provision of the Civil Practice and Remedies Code did not apply to deeds; and (3) Foster's DTPA claim failed as a matter of law because she did not believe the Law Firm's allegedly fraudulent statements regarding the debt, because the debt-collection action at issue was foreclosure, and because she did not have or allege any actual damages.[11] Because the trial court granted summary judgment without specifying a basis for its ruling, it could have relied on any of these arguments in rejecting Foster's Property Code, Civil Practice and Remedies Code, and DTPA claims. But on appeal, Foster does not mention, much less challenge, these claim-specific grounds for summary judgment. Thus, as to Foster's Property Code, Civil Practice and Remedies Code, and DTPA claims, we must affirm the trial court's summary judgment on the unchallenged grounds, regardless of the grounds' merits. *See Emmert*, 2021 WL 733301, at *3 (affirming summary judgment when appellant challenged only one of two grounds asserted in summary-judgment motion).

---

[11]The Law Firm reasserts these arguments on appeal, but Foster does not address them—even in her reply brief.

10

We overrule Foster's challenges to the summary judgment on these three claims.

**B.      Collateral estoppel undermines Foster's remaining claims.**

Foster's two remaining appealed claims—for statutory theft and breach of the alleged duty of impartiality[12]—are undermined by collateral estoppel.

"Collateral estoppel applies when an issue decided in the first action is [(1)] actually litigated, [(2)] essential to the prior judgment, and [(3)] identical to an issue in a pending action."[13] *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *see First Sabrepoint Cap. Mgmt.*, 712 S.W.3d at 85–86 (listing four elements); *Emmert*, 2021 WL 733301, at *3 (listing variation on three elements).

Here, Foster's statutory theft and duty-of-impartiality claims are premised on the idea that the Law Firm was required to send her notice of default under Section 51.002(d) of the Property Code. But, as the Law Firm's summary-judgment motion highlighted, *Ocwen* held otherwise. *See* 2021 WL 4783151, at *6–9.

---

[12]The Law Firm disputes Foster's contention that it owed a duty to the mortgagor. For purposes of our analysis, we assume without deciding that Foster's causes of action would be legally valid if they were not undermined by collateral estoppel. *See* Tex. R. App. P. 47.1.

[13]Collateral estoppel also requires that "the party against whom the [doctrine] . . . is being asserted [was] a party or in privity with a party in the [first action]." *First Sabrepoint Cap. Mgmt.*, 712 S.W.3d at 86. Here, there is no dispute that Foster was a party to the first action.

Foster does not dispute that she fully and fairly litigated her entitlement to notice of default under Section 51.002(d) in *Ocwen. See First Sabrepoint Cap. Mgmt.*, 712 S.W.3d at 85 ("[T]he party seeking the application of collateral estoppel must demonstrate that the facts in the current suit were fully and fairly litigated in the earlier action." (internal quotation marks omitted)). Nor does she dispute that the resolution of the notice issue was essential to *Ocwen*'s final judgment. *See id.* at 86 ("[A] party asserting the defense [of collateral estoppel] must establish that the same facts were essential to the judgment in the first suit." (internal quotation marks omitted)). Indeed, she could not plausibly claim otherwise given the centrality of the notice issue to her appeal in that case. *See Ocwen*, 2021 WL 4783151, at *6–8 (noting that Foster argued Ocwen had "failed to provide her with notice of default under Section 51.002(d)"). And there, we expressly held that because Foster "did not sign the note [secured by the lien] and [wa]s not obligated to pay it," she was not a "debtor" entitled to notice of default under Property Code Section 51.002(d). *Id.* at *7–8.

The identical notice issue forms the basis of Foster's claims against the Law Firm for statutory theft and breach of the duty of impartiality. *First Sabrepoint Cap. Mgmt.*, 712 S.W.3d at 85 ("[T]he party asserting the defense [of collateral estoppel] must show that the issue as to which it seeks to estop relitigation is the identical issue litigated in the other case."). To support her claim for statutory theft, Foster pleaded that the Law Firm had "unlawfully appropriated" her "constitutionally protected homestead," and in her summary-judgment motion and response, she explained that

such appropriation occurred when the Law Firm filed a foreclosure deed that "misstated the requirements of Tex. Prop. Code [Section] 51.002(d)" and that "alleg[ed] that all notices had been sent . . . as required by law." She makes the same argument on appeal, contending that the Law Firm unlawfully appropriated her homestead by "fraudulently claiming" that the Property Code's notice provisions had been satisfied.

Similarly, Foster pleaded that the Law Firm had breached its duty to act with "impartiality and fairness" by "fil[ing] the deceitful and misleading Foreclosure Sale Deed" after "fail[ing] and refus[ing] to comply with the notice mandates" in Property Code Section 51.002.[14] Then, in her summary-judgment motion and response, she explained that the Law Firm had breached its duty by failing to "ensure" that she had been provided notice under Section 51.002 and by filing the allegedly false foreclosure deed that "alleg[ed] that all notices had been sent . . . as required by law."

Yet, on appeal, Foster insists that collateral estoppel is inapplicable because the Law Firm's case was severed from Ocwen's and because the Law Firm's duties—to not steal and to ensure the provision of notice as the impartial foreclosure trustee—

---

[14]In portions of her appellate brief, Foster contends that the Law Firm could not fulfill its duty of impartiality as the foreclosure trustee without breaching its fiduciary duty to Ocwen. But she does not allege that such dual role constituted a de facto breach of the duty of impartiality, nor does she explain how the Law Firm's potential violation of its fiduciary duty to Ocwen harmed her. Rather, she appears to raise the dual-role issue to support her argument that the Law Firm was not entitled to attorney immunity and was not in privity with Ocwen for purposes of res judicata.

13

are independent and different from the duties owed by Ocwen. These arguments are inapposite.

Collateral estoppel "focus[es] on the issues being litigated instead of entire claims"; it does not require the claims in the second action to be identical to those in the first. *First Sabrepoint Cap. Mgmt.*, 712 S.W.3d at 85; *see Petta*, 44 S.W.3d at 579. In fact, the doctrine applies even if the nature of the second action is fundamentally different from that of the first.

For example, the Texas Supreme Court applied the doctrine when a plaintiff sued a police officer for assault and related torts after the plaintiff failed in a prior criminal prosecution to convince a jury that her flight from the officer had been reasonably necessary to avoid imminent harm. *Petta*, 44 S.W.3d at 576–78. Needless to say, the plaintiff's criminal prosecution was fundamentally different from her civil litigation, and the two cases involved different causes of action. Nonetheless, the Texas Supreme Court explained that, "[b]ecause both [the plaintiff's prior] criminal necessity defense and [the officer's] civil privilege defense turned on the same fact issue, i.e., the proportionality of [the officer's] actions, collateral estoppel bar[red the plaintiff] from relitigating whether [the officer's] use of force against [her] was privileged." *Id.* at 579–80 (noting that "[a] police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest" and "[i]f the officer uses more force than necessary, the suspect would then be justified to resist arrest").

14

Here, Foster herself framed the entire lawsuit as "a simple case about what 'notice' is constitutionally required to be given a person with a vested homestead right before their property right can be taken during the nonjudicial foreclosure process."[15] And on appeal, she reiterates that "[t]he [key] issue [is] whether [the Law Firm] had the right to file the Foreclosure Sale Deed . . . to dispos[sess] Foster of her constitutionally protected family home[]stead when [the Law Firm] knew that prerequisite notices had not been sent as required by . . . Property Code [Section] 51.002(d)." But her entitlement to Section 51.002(d) notice was fully and fairly litigated in *Ocwen*, and we held that Foster was not entitled to receive Section 51.002(d) notice. *See* 2021 WL 4783151, at *6–8 (holding that the "[d]efendants were not required to send her notice" under Section 51.002). Even though Foster's current claims against the Law Firm are distinct from those that she asserted against Ocwen, she is collaterally estopped from relitigating the Section 51.002(d) notice issue in this case. The trial court did not err by finding as much, applying the doctrine of collateral estoppel, and concluding that the doctrine undermined Foster's claims for statutory theft and breach of the duty of impartiality.[16]

---

[15]At the summary-judgment hearing, Foster argued that "the Texas Second Court of Appeals misspoke" in holding that she was not entitled to Section 51.002(d) notice. We disagree with this interpretation of *Ocwen*.

[16]Foster does not deny that collateral estoppel guts the premise of her statutory theft and duty-of-impartiality claims. In fact, she does not deny that collateral estoppel guts the premise of all of her appealed claims. And the record confirms that her

We overrule Foster's challenges to the summary judgment on her final two appealed claims.

## IV. Conclusion

Foster does not challenge all of the grounds for the summary judgment on three of her five appealed claims, and she is collaterally estopped from relitigating the

---

Property Code, Civil Practice and Remedies Code, and DTPA claims are largely premised on the notice issue:

- She pleaded that the Law Firm had violated Section 51.002(d) because it "knew that [she] was . . . entitled to notice of default . . . under the explicit mandates of Tex. Prop. Code [Section] 51.002[] but failed and refused to ensure that [she] had received notice of default."

- She pleaded that the Law Firm had violated the Civil Practice and Remedies Code by filing a "deceptive and misleading Foreclosure Sale Deed," and her summary-judgment response explained that the deed "misstated the requirements of Tex. Prop. Code [Section] 52.001(d)." *See* Tex. Civ. Prac. & Rem. Code § 12.002.

- She pleaded that the Law Firm had violated the DTPA by, among other things, "fil[ing] a misleading and deceptive Foreclosure Sale Deed" in the property records "to collect on a consumer debt for which [the Law Firm] knew [she] was not liable." And she elaborated in her summary-judgment response by asserting that the Law Firm misrepresented the debt and "had no statutory or contractual right to file a Foreclosure Sale Deed" because it had not complied with the statutory notice requirements.

Arguably, Foster's DTPA claim encompasses some allegations not necessarily resolved by the notice issue. *See supra* notes 3–4. Regardless, the remainder of her DTPA claim and the totality of her Property Code and Civil Practice and Remedies Code claims are premised on the notice issue and thus are undermined by collateral estoppel. So, even if Foster had challenged all of the grounds supporting the trial court's summary judgment on these notice-based claims, we would affirm those portions of the judgment.

16

premise of the remaining two appealed claims. The trial court did not err by finding as much and granting summary judgment in the Law Firm's favor. We affirm. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 30, 2026

17